UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

THOMAS DANIEL HUFF,            )
                                )
        Plaintiff               )
                                )
v.                              )   No. 2:13-cv-378-JDL
                                )
CAROLYN W. COLVIN,              )
Acting Commissioner of Social Security,  )
                                )
        Defendant               )

# REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question of whether the administrative law judge supportably found the plaintiff capable of performing past relevant work. The plaintiff contends that the administrative law judge erred in determining his residual functional capacity ("RFC") and in evaluating the opinion of examining source Christopher Muncie, Psy.D., and related testimony of Carol Kabacoff, Ph.D., and that these errors are not harmless. *See* Itemized Statement of Errors Pursuant to Local Rule 16.3 Submitted by Plaintiff ("Statement of Errors") (ECF No. 11) at 2-4. I find no error and, accordingly, recommend that the court affirm the decision.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me on September 12, 2014, pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

administrative law judge found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through December 31, 2014, Finding 1, Record at 15; that he had severe impairments of depressive disorder, not otherwise specified, anxiety disorder, not otherwise specified, polysubstance dependence, by report in early remission, and alcohol dependence, Finding 3, *id*.; that he retained the RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations: he was able to understand, carry out, and remember simple, repetitive instructions and could persist at that level of complexity for eight hours a day, five days a week on a consistent basis, and needed to avoid work with the general public but could interact appropriately with supervisors and co-workers and could handle changes in a routine work setting, Finding 5, *id*. at 17; that he was capable of performing past relevant work as a landscape laborer, which did not require the performance of work-related activities precluded by his RFC, Finding 6, *id*. at 21; and that he, therefore, was not disabled from October 20, 2009, his alleged onset date of disability, through the date of the decision, May 23, 2012, Finding 7, *id*. at 22. The Appeals Council declined to review the decision, *id*. at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 4 of the sequential evaluation process, at which stage the claimant bears the burden of proving inability to return to past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At this step, the commissioner must make findings of the plaintiff's RFC and the physical and mental demands of past work and determine whether the plaintiff's RFC would permit performance of that work. 20 C.F.R. §§ 404.1520(f), 416.920(f); Social Security Ruling 82-62 ("SSR 82-62"), reprinted in *West's Social Security Reporting Service* Rulings 1975-1982, at 813.

## I. Discussion

The plaintiff's points of error focus on the supportability of the administrative law judge's finding that he was able to persist at tasks involving simple, repetitive instructions for eight hours a day, five days a week on a consistent basis. *See* Statement of Errors at 2-4. He argues that this finding is unsupported by medical opinion and, in fact, contradicted by it. *See id.* at 2.

The record contains five opinions of agency consultants bearing on the severity and effects of the plaintiff's mental impairments. In a report of an evaluation conducted on October 11, 2010, agency examining consultant James F. Whelan, Jr., Psy.D., stated, in relevant part, that the plaintiff had "the apparent cognitive ability to be able to do work that is at least simple and repetitive in nature[,]" that he had "varied skills at persistence[,]" that "[t]he demand to persist may increase his level of anxiety[,]" and that "[a]ffective disorder may reduce his willingness to attempt to persist." Record at 513.

Agency nonexamining consultant Leigh Haskell, Ph.D., completed a psychiatric review technique form ("PRTF") dated October 22, 2010, in which, with the benefit of the Whelan report, she found the plaintiff to have severe affective and anxiety disorders causing, *inter alia*,

moderate difficulties in maintaining concentration, persistence, or pace. *See id*. at 516, 526, 528.

On the same date, she completed a mental RFC assessment in which she found, in relevant part:

> He can be reliable and sustain 2-hour blocks at simple tasks over a normal work day/week. He keeps appointments and carries out a range of sustained activities such as those described above [preparing simple meals, doing laundry, shopping, handling money, and driving]. He remained seated and focused throughout the CE [consultant's evaluation]. He can not sustain attention on complex tasks.

*Id*. at 540.

In a report of an evaluation conducted on April 11, 2011, Dr. Muncie stated, in relevant part, "Anxiety and negative patterns to rumination would . . . be expected to interfere with [the plaintiff's] ability to persist on tasks within a work setting." *Id*. at 684. He noted, "Nevertheless, [the plaintiff] was capable of communicating his thoughts clearly and logically with this examiner." *Id*.

With the benefit of the Whelan and Muncie reports, agency nonexamining consultant Mary A. Burkhart, Ph.D., completed a PRTF dated April 21, 2011, in which she found that the plaintiff had a substance addiction disorder sufficiently severe to be disabling but, if one did not consider drug or alcohol abuse, he had only a nonsevere anxiety disorder causing, *inter alia*, mild difficulties in maintaining concentration, persistence, or pace. *See id*. at 115-16.

At the plaintiff's hearing on May 8, 2012, Dr. Kabacoff testified that he suffered from depressive disorder, not otherwise specified, anxiety disorder, not otherwise specified, polysubstance dependence, by report, in early remission, and alcohol dependence. *See id*. at 61. She stated that, considering everything, including substance abuse, he had, *inter alia*, mild to moderate difficulties in maintaining concentration, persistence, or pace. *See id*. at 62-63. She noted, "For concentration, persistence or pace, we don't have hard data. We don't have any testing[.]" *Id*. at 62.

The following colloquy ensued between Dr. Kabacoff and the plaintiff's counsel:

> Q  Well, Dr. Muncie . . . says . . . that anxiety and negative patterns, rumination would also be expected to interfere with his ability to persist on tasks within a work setting?
>
> A  Yes. It could.
>
> Q  So you would agree with that, he might have a significant problem persisting on tasks over the course of a typical full-time work schedule?
>
> A  That he could have, yes.

*Id.* at 66-67. The administrative law judge then asked Dr. Kabacoff "what sort of functional limitations" she would expect. *Id.* at 67. She testified, in relevant part: "I would expect that he would have more difficulty understanding and remembering, primarily remembering detailed instructions and then carrying out detailed instructions. I think he would do much better if things were more simple and repetitive." *Id.*

A further colloquy ensued between Dr. Kabacoff, the plaintiff's counsel, and the administrative law judge:

> ATTY:  But I think you just indicated you would agree with what Dr. Muncie and Dr. Waylon [sic] to a certain extent said that he could have particularly – could have, I mean, if you give credibility to what he says – difficulty maintaining persistence over the full range of a full, 40-hour week work schedule?
>
> ME:  He could based on what he describes today.
>
> ATTY:  Which is, I believe, consistent with what Dr. Muncie and Dr. –
>
> ME:  Right. Because that's what he described to them, also.
>
> ***
>
> ALJ:  And when . . . they make a statement that they could have difficulties, I mean, when you say someone could have, is that, does that mean that there's just . . . a chance that that could happen but it also may not happen?

5

> ME: Right. But there's a fair likelihood but it also may not. It may be slight as opposed to extreme.
>
> ALJ: So it may just – it may happen every now and then where he has a little bit of an issue today and can't pull it together but maybe not over a long duration?
>
> ME: Right, correct.
>
> ATTY: Well, what Dr. Muncie said was would be expected, not could. I take it you would agree that would be expected means that he would expect that to happen?
>
> ALJ: He's saying anxiety and negative patterns would also be expected to interfere.

*Id.* at 68-69.

In her decision, the administrative law judge stated, in relevant part:

> Overall, the [plaintiff] is affected by mild to moderate limitations caused by substance abuse, depressive disorder, and anxiety disorder. As discussed above, mental status examinations have revealed no evidence of lack of orientation or disordered thought processes. He is fully capable of effectively conveying information in a socially appropriate manner with no evidence of communicative deficits or overt signs of anxiety. While he can reasonably be expected to struggle with complex instructions and tasks, there is little indication that he cannot meet the basic mental demands of unskilled work. . . .
>
> As for the opinion evidence, Dr. Kabacoff's expert opinion is granted great evidentiary weight. She had the most recent opportunity to examine the longitudinal treatment record and her opinion is consistent with the evidence as a whole. She cited objective findings in support of her conclusion as well. For the reasons discussed above, Dr. Whelan's consultative opinion is granted little evidentiary weight as this one-time snapshot of the [plaintiff's] functional abilities is not generally consistent with the evidence of record. Dr. Muncie's subsequent consultative opinion is granted some evidentiary weight as it is more consistent with the overall treatment record as summarized by Dr. Kabacoff.[2]

---

[2] The administrative law judge had earlier explained that mental status examinations in the treatment record did not note cognitive limitations of the significance found by Dr. Whelan, and there was little support elsewhere in the record for the low Global Assessment of Functioning ("GAF") score of 45 that he assessed. *See* Record at 19. She noted that, during Dr. Muncie's examination, the plaintiff exhibited impairments in attention, concentration, and memory but otherwise spoke clearly and articulately with logical and goal-directed speech, and that Dr. Muncie assessed his GAF score as 60, indicating generally mild symptomatology. *See id.* at 19. A GAF score represents "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed., text rev. 2000). The GAF score is taken from the GAF
(*continued on next page*)

> In accordance with Social Security Ruling 96-6p, the undersigned has considered the administrative findings of fact made by the state agency non-examining medical physician [Dr. Burkhart]. The undersigned notes that this opinion is from a non-examining and non-treating expert source. The finding that the [plaintiff] does not have a severe impairment in the absence of substance abuse is not consistent with the medical evidence as a whole. As Dr. Kabacoff testified, there is sufficient evidence of depressive and anxiety disorders regardless of the [plaintiff's] substance abuse. These impairments would at least cause more than minimal limitations in the absence of substance abuse and are therefore severe. Some weight is given to the opinion of Dr. Haskell insofar as [her] findings are consistent with Dr. Kabacoff's testimony.

*Id*. at 20-21 (citations omitted).

The plaintiff contends that the finding that he was able to persist at tasks involving simple, repetitive instructions for eight hours a day, five days a week on a consistent basis is contradicted by the medical evidence in that Dr. Muncie noted that anxiety and negative patterns to rumination would be expected to interfere with his ability to persist, and Dr. Kabacoff did not disagree either with that finding, or the finding that he could be impaired from completing a normal workweek. *See* Statement of Errors at 2. He asserts that the administrative law judge ignored this aspect of both Dr. Muncie's report and Dr. Kabacoff's testimony. *See id*. at 2-3. He acknowledges that the Haskell mental RFC opinion is similar to that of the administrative law judge but contends that because Dr. Haskell did not have the benefit of the later-submitted Muncie report, her RFC opinion cannot stand as substantial evidence in support of the

---

scale, which "is to be rated with respect only to psychological, social, and occupational functioning." *Id.* The GAF scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). *Id.* at 34. A GAF score of 41 to 50 represents "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Id*. (boldface omitted). While a GAF score of 60 falls within the range of scores representing moderate symptoms (51 to 60), it is only one point below the range of scores representing mild symptoms (61 to 70). *See id*.

determination. *See id*. at 3. He points out that the Burkhart and Whelan opinions have no bearing, the administrative law judge having discredited both. *See id*. Therefore, he reasons, the portion of the RFC determination concerning his ability to persist has no medical support, reflecting the administrative law judge's impermissible lay opinion. *See id*.; *see also, e.g.*, *Gordils v. Secretary of Health & Human Servs.,* 921 F.2d 327, 329 (1st Cir. 1990) (Although an administrative law judge is not precluded from "rendering commonsense judgments about functional capacity based on medical findings," he or she "is not qualified to assess residual functional capacity based on a bare medical record.").

He argues that the administrative law judge committed a separate error in ignoring that portion of Dr. Muncie's opinion stating that he would be expected to have difficulty persisting at tasks, as well as the related testimony of Dr. Kabacoff. *See* Statement of Errors at 4.

Nonetheless, I agree with the commissioner that the administrative law judge's finding as to the plaintiff's ability to persist is supported by the opinions of Drs. Haskell and Kabacoff, which together comprise substantial evidence on that point. *See* Defendant's Opposition to Plaintiff's Itemized Statement of Errors ("Opposition") (ECF No. 13) at 2-3.

The administrative law judge's finding is directly supported by the Haskell opinion. The administrative law judge stated that she accorded that opinion some weight, to the extent that it was not inconsistent with Dr. Kabacoff's testimony. *See* Record at 21. She reasonably could have found that to be the case with respect to the question of the plaintiff's ability to persist. Dr. Kabacoff testified that the plaintiff had only mild to moderate restrictions in concentration, persistence, or pace. *See id*. at 62. In that category, the only functional restrictions she identified were difficulties in understanding, remembering, and carrying out detailed instructions. *See id*. at 67. She added that the plaintiff would "do much better if things were more simple and

repetitive." *Id*. Finally, she did not testify that she agreed with Dr. Muncie that the plaintiff *would* be expected to have difficulty persisting: she stated that the plaintiff *could* have such difficulty based on his self-reports. *See id*. at 66-69. Although Dr. Kabacoff's testimony as to the plaintiff's ability to persist is not crystal-clear, it need not have been. The administrative law judge reasonably could have found it consistent with Dr. Haskell's mental RFC opinion.[3]

The administrative law judge, thus, neither interpreted raw medical evidence in determining the plaintiff's ability to persist at tasks nor reached a conclusion unsupported by substantial evidence. Nor did she err in her handling of Dr. Muncie's report. As the commissioner points out, the administrative law judge was "not required to expressly refer to each document in the record, piece-by-piece[.]" Opposition at 6 (quoting *Rodriguez v. Secretary of Health & Human Servs*., No. 90-1039, 1990 WL 152336, at *1 (1st Cir. Sept. 11, 1990)). While she did not discuss Dr. Muncie's specific finding regarding persistence, she expressly stated that she gave his report some evidentiary weight and implicitly rejected it to the extent that it conflicted with the Haskell and Kabacoff opinions. This was within her purview. *See, e.g., Rodriguez,* 647 F.2d at 222 ("The Secretary may (and, under his regulations, must) take medical evidence. But the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for him, not for the doctors or for the courts.").

---

[3] At oral argument, counsel for the commissioner posited that the best-case scenario for the plaintiff was that his interpretation of Dr. Kabacoff's testimony and that of the commissioner were equally reasonable, a circumstance in which the court must find for the commissioner pursuant to the applicable standard of review. I agree. "While 'substantial evidence' is 'more than a scintilla,' it certainly does not approach the preponderance-of-the-evidence standard normally found in civil cases." *Bath Iron Works Corp. v. United States Dep't of Labor*, 336 F.3d 51, 56 (1st Cir. 2003). "Rather, [the court] will accept the findings and inferences drawn by the ALJ [administrative law judge], whatever they may be, unless they are 'irrational.'" *Id*. Moreover, even under the more stringent preponderance-of-the-evidence standard, the party bearing the burden of proof loses "when the evidence presented by the two sides is in perfect equipoise." *Gent v. CUNA Mut. Ins. Soc'y*, 611 F.3d 79, 83 (1st Cir. 2010). As noted above, the claimant bears the burden at Step 4 of proving his or her inability to return to past relevant work, a critical component of which is the claimant's RFC.

## II. Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 30th day of September, 2014.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge